# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: | : | MDL No. 2067 |
| | : | |
| CELEXA AND LEXAPRO MARKETING AND SALES PRACTICES LITIGATION | : : | Master Docket No. 09–MD–2067 (NMG) |
| | : | Judge Nathaniel M. Gorton |
| THIS DOCUMENT RELATES TO: | : : | |
| RANDY and BONNIE MARCUS, on behalf of themselves and all other persons similarly situated | : : : | |
| *Plaintiffs* | : | No. 13–CV–11343 (NMG) |
| v. | : | |
| FOREST LABORATORIES, INC. and FOREST PHARMACEUTICALS, INC. | : : | Leave to File Granted on September 16, 2013 |
| *Defendants* | : | |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE *MARCUS* COMPLAINT

SUGARMAN, ROGERS, BARSHAK
& COHEN, P.C.
101 Merrimac Street
Boston, MA 02114
Tel.: (617) 227–3030
Fax.: (617) 523-4001

*Of counsel*:

Natasha C. Lisman (BBO # 301700)
William F. Benson (BBO # 646808)
lisman@srbc.com
benson @srbc.com

DEBEVOISE & PLIMPTON LLP

919 Third Avenue
New York, NY  10022
Tel.: (212) 909–6000
Fax:  (212) 909–6836

*Of counsel*:

Edwin G. Schallert
Kristin D. Kiehn
J. Robert Abraham
egschall@debevoise.com
kdkiehn@debevoise.com
jrabraham@debevoise.com

*Attorneys for Defendants Forest Laboratories, Inc. and Forest Pharmaceuticals, Inc.*

## **TABLE OF CONTENTS**

                                                                                                                                    Page

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT .................................................................................................................................. 2

    A.    THE FDA APPROVAL PROCESS ADHERES TO RIGOROUS SCIENTIFIC STANDARDS AS REQUIRED BY FEDERAL LAW ................................................................. 2

    B.    THE COMPLAINT IS BARRED BY CALIFORNIA'S SAFE HARBOR DOCTRINE .......................... 4

    C.    PLAINTIFFS' CLAIMS ARE PREEMPTED BY FEDERAL LAW ....................................................... 6

    D.    THE COMPLAINT SHOULD BE DISMISSED UNDER THE PRIMARY JURISDICTION DOCTRINE ................................................................................................................................. 9

CONCLUSION ............................................................................................................................. 10

# TABLE OF AUTHORITIES

**CASES**

*Aaronson v. Vital Pharm., Inc.*, No. 09-cv-1333,
    2010 WL 625337 (S.D. Cal. Feb. 17, 2010) ...................................................................10

*Ball v. Takeda Pharm. Am., Inc.*, No. 3-13-cv-00168-JAG,
    2013 WL 4040395 (E.D. Va. Aug. 8, 2013) .................................................................4, 6

*Bober v Glaxo Wellcome PLC*, 246 F.3d 934 (7th Cir. 2001) .......................................................4, 5

*Bronson v. Johnson & Johnson, Inc.*, No. C 12-04084 CRB,
    2013 WL 1629191 (N.D. Cal. Apr. 16, 2013) ...............................................................5, 6

*Cytyc Corp. v. Neuromedical Sys., Inc.*, 12 F. Supp. 2d 296 (S.D.N.Y. 1998) ..............................5

*Delarosa v. Boiron, Inc.*, 818 F. Supp. 2d 1177 (C.D. Cal. 2011) ...................................................5

*DePriest v. Astrazeneca Pharm., L.P.*, 351 S.W.3d 168 (Ark. 2009) ..............................................5

*Lynch v. Tropicana Prods., Inc.*, No. 2:11-cv-07382 (DMC)(JAD),
    2013 WL 2645050 (D.N.J. June 12, 2013) ......................................................................6

*Pardini v. Unilever U.S., Inc.*, No. 13-1675 SC,
    2013 WL 3456872 (N.D. Cal. July 9, 2013) .....................................................................5

*Pejepscot Indus. Park, Inc. v. Maine Central R.R.*, 215 F.3d 195 (1st Cir. 2000) ......................10

*Penn. Emps. Benefit Trust Fund v. Zeneca, Inc.*, 499 F.3d 239 (3d Cir. 2008) ............................7

*PLIVA, Inc. v. Mensing*, 131 S. Ct. (2011) ..................................................................................9

*Prohias v. AstraZeneca Pharm., L.P.*, 958 So.2d 1054 (Fla. Ct. App. 2007) ................................5

*Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228 (S.D. Fla. 2007) ..................................................5, 7

*Route v. Mead Johnson Nutrition Co.*, No. CV 12-7350-GW(JEMx),
    2013 WL 658251 (C.D. Cal. Feb. 21, 2013) ....................................................................6

*Samet v. Procter & Gamble Co.*, No. 5:12-CV-01891,
    2013 WL 3124647 (N.D. Cal. June 18, 2013) .................................................................6

*Scheuerman v. Nestle Healthcare Nutrition, Inc.*, Nos. 10-3684 (FSH)(PS),
    10-628(FSH)(PS), 2012 WL 2916827 (D.N.J. July 17, 2012) .......................................6

*Von Koenig v. Snapple Beverage Corp.*, 713 F. Supp. 2d 1066 (E.D. Cal. 2010) ........................5

*Wyeth v. Levine*, 555 U.S. 555 (2009) ............................................................................... *passim*

**STATUTES & REGULATIONS**

21 U.S.C. § 355(d)(7) ..............................................................................................................3

21 C.F.R. § 201.56 ..................................................................................................................3

21 C.F.R. § 201.57 ..................................................................................................................3

21 C.F.R. § 201.100(d)(1) .......................................................................................................9

21 C.F.R. § 314.3(b) ...............................................................................................................9

21 C.F.R. § 314.50(c)(2)(i) .....................................................................................................4

21 C.F.R. § 314.70(b)(2)(v)(A) ..............................................................................................8

21 C.F.R. § 314.70(c)(6)(iii) ............................................................................................1, 2, 8

21 C.F.R. § 314.105(c) ........................................................................................................3, 4

21 C.F.R. § 314.125(b) .......................................................................................................3, 4

Fed. R. Civ. P. 12(b)(6) .....................................................................................................1, 10

**OTHER AUTHORITIES**

MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 779 (11th ed. 2004) ..........................................9

Defendants Forest Laboratories, Inc. and Forest Pharmaceuticals, Inc. (together "Forest" or "Defendants") respectfully submit this reply memorandum of law in further support of their motion to dismiss the complaint with prejudice. Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiffs acknowledge that the FDA determined that substantial evidence establishes that Lexapro is effective in treating adolescent depression, and they "do not challenge that finding." *See* Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Marcus Complaint ("Pl. Br.") at 13. Plaintiffs further acknowledge that the FDA determined that Lexapro's label is not false or misleading. *Id*. at 11-12.

Nonetheless, plaintiffs seek to impose liability on defendants for violating California's consumer fraud statutes on the theory that Lexapro's label *is* materially misleading because—despite the FDA's determinations—the label fails to state that Lexapro has no meaningful ability to outperform placebo. *See id*. at 4–6; Complaint ("Compl.") at ¶¶ 56–62. Plaintiffs' contention that "the disclosures" it seeks to require would not directly contradict the FDA's expert evaluation of the clinical data and its determination that Lexapro is effective is patently untrue. The complaint is barred by California's safe harbor doctrine, which exempts manufacturers from liability for consumer fraud where the FDA has previously determined that the drug label in question is not false or misleading and has expressly authorized its statements.

Throughout their brief, plaintiffs misapply preemption jurisprudence by incorrectly relying on *Wyeth v. Levine*, 555 U.S. 555 (2009). *Wyeth* addressed the issue of adding stronger *safety warnings* to an FDA-approved label in light of new information. The result in *Wyeth* was that a manufacturer in possession of new information not previously considered by the FDA can be required by state law to add a stronger safety warning to its label if doing so is permissible under federal law (*i.e.*, pursuant to the FDA's "Changes Being Effected Regulation" ("CBE

Regulation"), 21 C.F.R. § 314.70(c)(6)(iii)). Plaintiffs' consumer protection claims, by contrast, are premised on alleged *false or deceptive* conduct relating to Lexapro's efficacy—*i.e.*, notwithstanding the FDA's determination to the contrary, Lexapro's FDA-approved label is materially misleading because it misrepresents Lexapro's efficacy. Not only are prescription drug efficacy determinations entrusted by Congress solely to the FDA, not the states, but plaintiffs have not identified any "new information" that would warrant overriding the FDA's prior conclusion that "effectiveness has been established." Instead, plaintiffs' claims are based entirely on their differing interpretation of the *same data* evaluated by the FDA. For all of these reasons, the claims are preempted.

The complaint seeks to impose a new state-law standard to govern descriptions of efficacy and clinical data in prescription drug labels that would trump the FDA's standards. Pl. Br. 3–4. Permitting such claims would fly in the face of Congress's carefully constructed regulatory regime governing efficacy determinations and labeling, and—in this case, and unlike in *Wyeth*—require overturning the FDA's prior determination of matters entrusted exclusively to the FDA's expert judgment and discretion.

## ARGUMENT

### A. THE FDA APPROVAL PROCESS ADHERES TO RIGOROUS SCIENTIFIC STANDARDS AS REQUIRED BY FEDERAL LAW

Although plaintiffs claim they are not contesting there is substantial evidence supporting Lexapro's efficacy for adolescents or that FDA approval was proper, plaintiffs contend that the FDA's determinations have little meaning because the agency requires only minimum thresholds for approval that are easily met and performs only a cursory review of drug labels. Pl. Br. at 10–12. Plaintiffs grossly distort the rigorous FDA approval process.

The statutory framework governing prescription drugs delegates to the FDA sole discretion to grant or withhold marketing approval. In carrying out this role, federal law requires that the FDA find "substantial evidence" of efficacy before approving an application, which must consist of "adequate and well-controlled investigations . . . by experts qualified by scientific training and experience to evaluate the effectiveness of the drug involved, on the basis of which it could fairly and responsibly be concluded by such experts that the drug will have the effect it purports or is represented to have . . . ." 21 U.S.C. § 355(d)(7). For each application, the FDA is empowered to determine the "kind and quantity of data and information an applicant is required to prove for a particular drug to meet the statutory standards [for safety and effectiveness, manufacturing and controls, and labeling]." 21 C.F.R. § 314.105(c). Plaintiffs' contention that the FDA does not "engage in a comprehensive determination of efficacy" is baseless, Pl. Br. at 11, as is their suggestion that the FDA *must* approve an application if a manufacturer submits one clinical study and other confirmatory evidence of efficacy. *Id*. The FDA *may*, but is not required to, approve an application in such circumstances if it determines the statutory criteria are met, and conversely must "refuse to approve an application" if the agency concludes "[t]here is a lack of substantial evidence consisting of adequate and well-controlled investigations . . . ." 21 C.F.R. § 314.125(b)(5).

Equally inaccurate is plaintiffs' contention that the FDA's review of drug labels is akin to a rubber stamp and that the FDA *must* approve a manufacturer's proposed label unless the agency is willing to deny the drug application in its entirety. Pl. Br. at 11–12. To the contrary, the FDA has developed voluminous regulations governing the language, content, and formatting of prescription drug labels to which drug manufacturers are required to adhere when creating their proposed labeling. *See* 21 C.F.R. §§ 201.56, 201.57. A drug application must include

3

"[t]he proposed text of the labeling . . . with annotations to the information in the [application] that support the inclusion of *each statement in the labeling* . . . ." 21 C.F.R. § 314.50(c)(2)(i) (emphasis added). The FDA is required to deny a drug application if the proposed labeling "*is false or misleading in any particular*" or otherwise "does not comply with the requirements for labels and labeling." 21. C.F.R. §§ 314.125(b)(6), (8) (emphasis added). The FDA also requires that manufacturers make labeling changes as directed by the FDA before the drug can be marketed. 21 C.F.R. § 314.105(c). Plaintiffs' suggestion that the FDA has little influence over the content of prescription drug labeling is frivolous.

## B.     THE COMPLAINT IS BARRED BY CALIFORNIA'S SAFE HARBOR DOCTRINE

Plaintiffs concede that California law incorporates a safe harbor, but attempt to distract the Court from their inability to avoid dismissal on that basis by resorting to exaggerated assertions that defendants are seeking to avoid *all* consumer fraud claims and *carte blanche* to conceal material information. Pl. Br. at 1. Defendants seek no such result, and California's safe harbor doctrine plainly bars these clams.

The FDA specifically authorized Forest to distribute Lexapro's label, including the statement, "Safety and effectiveness has been established in adolescents," after determining that the label is not false or misleading in any particular. Plaintiffs' argument that the safe harbor is inapplicable because neither federal law nor the FDA has "authorized Forest to conceal important efficacy information from consumers and prescribers" completely misses the mark. *Id*. at 17. Courts across the country have dismissed consumer fraud claims such as these that would punish a drug manufacturer for engaging in conduct specifically authorized (and even required) by federal law—*i.e.*, dissemination of an FDA-approved label and statements consistent therewith. *See, e.g., Bober v Glaxo Wellcome PLC*, 246 F.3d 934, 941–43 (7th Cir. 2001); *Ball v. Takeda Pharm. Am., Inc.*, No. 3-13-cv-00168-JAG, 2013 WL 4040395, at *8–9

4

(E.D. Va. Aug. 8, 2013); *DePriest v. Astrazeneca Pharm., L.P.*, 351 S.W.3d 168, 177–78 (Ark. 2009); *Prohias v. AstraZeneca Pharm., L.P.*, 958 So.2d 1054, 1056 (Fla. Ct. App. 2007); *Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228, 1234–35 (S.D. Fla. 2007); *Cytyc Corp. v. Neuromedical Sys., Inc.*, 12 F. Supp. 2d 296, 301 (S.D.N.Y. 1998). Plaintiffs make no attempt to distinguish the numerous cases supporting dismissal.[1]

Plaintiffs also incorrectly suggest that *Wyeth v. Levine* invalidated safe harbor jurisprudence and that nearly every post-*Wyeth* court addressing allegedly misleading statements in FDA-approved labels has concluded the safe harbor does not apply. Pl. Br. at 17. *Wyeth* concerned federal preemption of state-law failure-to-warn claims, not application of a state-law safe harbor against consumer protection liability. Unsurprisingly, none of the cases cited by plaintiffs relied on *Wyeth* in denying application of the safe harbor. *See id*. at 15–17. Furthermore, the cases cited by plaintiffs did not involve prescription drug labels, but rather *food labels* or *over-the-counter consumer product labels* that are not subject to the rigorous pre-marketing review and approval process that applies to prescription drug labels, and in which the FDA consequently had *not* previously determined that the labels were neither false nor misleading.[2]

---

[1] Plaintiffs vaguely allege that defendants made unidentified "omissions and actions . . . that do not involve the drug label." Pl. Br. at 13 n. 5. As the cases cited by defendants demonstrate, even if such allegations had been pleaded in the complaint, the safe harbor doctrine protects a manufacturer's statements from consumer fraud liability where they are consistent with the FDA-approved label. *See, e.g.*, *Bober*, 246 F.3d at 941–43; *Cytyc*, 12 F. Supp. 2d at 301; *Prohias,* 490 F. Supp. 2d at 1234–35; *Prohias*, 958 So.2d at 1056; *DePriest*, 351 S.W.3d at 177–78.

[2] *See Pardini v. Unilever U.S., Inc.*, No. 13-1675 SC, 2013 WL 3456872, at *7 & n. 6 (N.D. Cal. July 9, 2013) (declining to apply safe harbor where food labeling practice was not "expressly permitted by FDA"); *Bronson v. Johnson & Johnson, Inc.*, No. C 12-04084 CRB, 2013 WL 1629191, at *7 (N.D. Cal. Apr. 16, 2013) (declining to apply safe harbor to food label claim where applicable FDA regulations were scant); *Delarosa v. Boiron, Inc.*, 818 F. Supp. 2d 1177, 1189 (C.D. Cal. 2011) (declining to apply safe harbor to homeopathic OTC labeling claim where "the FDA has not set up a comprehensive process to evaluate the safety or efficacy" of such products); *Von Koenig v. Snapple Beverage Corp.*, 713 F. Supp. 2d 1066, 1075–76 (E.D. Cal. 2010) (declining to apply safe harbor to

5

As recently as last month, another federal court dismissed a complaint against a prescription drug manufacturer pursuant to the safe harbor doctrine which alleged that statements in an FDA-approved label were false and misleading. *See Ball*, 2013 WL 4040395, at *8–9 (dismissing Virginia consumer protection claims). The same result should apply here.[3]

### C.   PLAINTIFFS' CLAIMS ARE PREEMPTED BY FEDERAL LAW

Plaintiffs' argument that their claims are not preempted because they raise no actual conflict between state and federal law and because defendants can unilaterally alter Lexapro's label to make the changes they want misapplies preemption jurisprudence and misrepresents applicable federal regulations.

*First*, plaintiffs' contention that the "Efficacy Information"—plaintiffs' contrived list of allegedly withheld information—does not contradict the FDA's prior findings is patently incorrect. Pl Br. at 12–13. As merely one example, Lexapro's FDA-approved label states, "Safety and effectiveness has been established in adolescents." Abraham Decl. Ex. 2 at 17; Compl. ¶ 57. Plaintiffs allege the label violates state law by not disclosing that the clinical

---

food label claim because there was "no law which expressly authorize[d] defendant's conduct" beyond an "informal" FDA policy). Others were food labeling claims premised on a specific violation of federal law—not *compliance* with federal law as here, where plaintiffs concede that Lexapro's label was properly approved by the FDA. *See Samet v. Procter & Gamble Co.*, No. 5:12-CV-01891, 2013 WL 3124647, at *6, *10 (N.D. Cal. June 18, 2013) (permitting food label claim where allegation was that defendant "violated the [governing] FDA regulation"); *Lynch v. Tropicana Prods., Inc.*, No. 2:11-cv-07382 (DMC)(JAD), 2013 WL 2645050, at *6 (D.N.J. June 12, 2013) (declining to apply safe harbor where food label claim involved "an alleged failure to meet the requirements of federal law").

[3]   Plaintiffs' claims also resemble "lack of substantiation" claims which are routinely dismissed by California courts. Such claims seek to hold manufacturers liable for marketing claims that are not demonstrably or objectively false, but which allegedly lack the scientific support plaintiffs believe should be required. *See, e.g., Bronson*, 2013 WL 1629191, at *8–9 (dismissing lack of substantiation claims because they did not rest on "provable falsehood, [and] are not cognizable under the California consumer protection laws"); *Route v. Mead Johnson Nutrition Co.*, No. CV 12-7350-GW(JEMx), 2013 WL 658251, at *5 (C.D. Cal. Feb. 21, 2013) (dismissing claims where core allegations were based on plaintiff's subjective belief that advertisements were false); *Scheuerman v. Nestle Healthcare Nutrition, Inc.*, Nos. 10-3684 (FSH)(PS), 10-5628(FSH)(PS), 2012 WL 2916827, at *7–8 (D.N.J. July 17, 2012) (dismissing claims where plaintiffs case "boil[s] down to a claim that . . . scientific support . . . is not as strong as it should be").

studies relied upon by the FDA in reaching this determination failed to demonstrate any clinical significance between Lexapro and placebo and in fact showed that Lexapro has no meaningful benefit over placebo. Compl. ¶¶ 57–62. To suggest those "disclosures" do not conflict with the FDA's determination is absurd. Furthermore, plaintiffs' contention that Lexapro's label is false and misleading indisputably contradicts the FDA's prior conclusion that the label is **not** false or misleading in any particular.

    *Second*, plaintiffs' reliance on *Wyeth v. Levine* is misplaced. *Wyeth* involved a failure-to-warn claim and addressed whether a manufacturer can be required under state law to add safety warnings to a drug label based on new information received by the manufacturer and not previously reviewed by the FDA. 555 U.S. at 568–71. The *Wyeth* Court determined that this was permissible because federal law permits manufacturers to make such changes to their labels unilaterally under the CBE Regulation. *Id.* at 568–72. By contrast, plaintiffs seek to hold defendants liable for committing consumer fraud for distributing a purportedly false and misleading drug label which the FDA has determined is *not* false or misleading and has expressly authorized for distribution. Such claims are preempted. *See, e.g., Penn. Emps. Benefit Trust Fund v. Zeneca, Inc.*, 499 F.3d 239, 245, 251 (3d Cir. 2008), *vacated* 129 S. Ct. 1578 (U.S. Mar. 9, 2009) (No. 07-822) (remanding for further consideration in light of *Wyeth v. Levine*, 555 U.S. 555 (2009)), *remanded to* 710 F.Supp.2d 458 (D. Del. 2010) (dismissing consumer protection claims on other grounds) (noting that by approving drug application, "FDA has determined that [labeling statements] are not false or misleading"); *Prohias*, 490 F. Supp. 2d at 1234 ("[E]fforts to hold [defendant] liable [for consumer fraud] . . . conflicts with the FDA's jurisdiction over drug labeling. . .").

7

***Third***, even assuming such a claim was permissible, unlike in *Wyeth*, the CBE Regulation does not permit defendants to make these label changes unilaterally without prior FDA approval for at least three reasons.  First, the CBE Regulation only allows manufacturers to make "***moderate***" changes to their drug labels.  *See* 21 C.F.R. § 314.70(b)(2)(v)(A).  Changes to the "Clinical Studies" section of a prescription drug label—which is what plaintiffs seek here—are considered "***major***" changes that cannot be made unilaterally.  *See* Memorandum of Law in Support of Defendants' Motion to Dismiss the *Marcus* Complaint at 15–16.  Tellingly, plaintiffs fail to address this glaring obstacle.  Second, the CBE Regulation only permits manufacturers to "***delete*** false, misleading, or unsupported indications for use or claims for effectiveness." 21 C.F.R. § 314.70(c)(6)(iii)(D).  Plaintiffs inaccurately describe the Regulation as permitting manufacturers to "correct" such information, as opposed to being limited to deletion of the information.  Pl. Br. at 14.  Because they concede there is substantial evidence of Lexapro's efficacy and that the FDA's approval was proper, *id*. at 13, plaintiffs plainly are not suggesting that the statements about Lexapro's efficacy be *deleted*.  Rather, they are contending that additional information should be *added* to cure what they claim are material omissions in the information provided.  The CBE Regulation does not permit such unilateral changes.  Third, the only information plaintiffs cite that might conceivably be considered "newly acquired information" justifying invocation of the CBE Regulation is a so-called 2011 "meta-study"[4] which does not meet the applicable requirements.  Pl. Br. at 4–5, 14–15; Compl. ¶¶ 54, 60 & n.12.  The CBE Regulation recognizes "new analyses of previously submitted data (e.g. meta-analyses)" as "newly acquired information" only where the "studies, events, or analyses reveal risks of a different type or greater severity or frequency than previously included in submissions

---

4   *See* Abraham Reply Decl., Ex. 1 (Carandang et al., A Review of Escitalopram and Citalopram in Child and Adolescent Depression, J. Can. Acad. of Child and Adolescent Psych. (November 2011)).

to [the] FDA." 21 C.F.R. § 314.3(b) (emphasis added). The "meta-study" cited by plaintiffs is not a meta-analysis at all,[5] nor does it reveal any new risks; it is merely an article in a Canadian journal limited to a "literature review" of the studies evaluated by the FDA which opines that Lexapro's approval was "premature." *See* Abraham Reply Decl., Ex. 1 (Carandang et al.).[6]

***Fourth***, plaintiffs' suggestion that defendants could satisfy their purported state law duty by making these disclosures through avenues other than the drug label itself, such as through "Dear Doctor" letters and direct-to-consumer advertisements, Pl. Br. at 13 n.5, 15, is meritless. Plaintiffs acknowledge that manufacturers are not permitted to make claims that contradict an FDA-approved label, *id*. at 15, which includes claims appearing in "Dear Doctor" letters and other types of materials considered to be part of a drug's "labeling." *See PLIVA, Inc. v. Mensing*, 131 S. Ct., 2567, 2576 (2011); 21 C.F.R. § 201.100(d)(1) (noting "Dear Doctor" letters must be "consistent with and not contrary to [the approved] labeling"). As discussed above, publicly disseminating the plaintiffs' contrived list of allegedly withheld "Efficacy Information" would directly contradict the FDA's conclusions as reflected in the approved label.

### D.  THE COMPLAINT SHOULD BE DISMISSED UNDER THE PRIMARY JURISDICTION DOCTRINE

Finally, contrary to plaintiffs' suggestion, defendants are not contending that the FDA should determine whether these claims violate California's consumer protection laws. However, to adjudicate these claims, the Court would need to evaluate the clinical studies to determine

---

[5]  A "meta-analysis" is defined as a "quantitative statistical analysis of several separate but similar experiments or studies in order to test the pooled data for statistical significance." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 779 (11th ed. 2004).

[6]  Plaintiffs' suggestion that this article should override the FDA's scientific conclusions is particularly suspect given that the lead author's medical license was suspended in 2011. As of 2012, he was not teaching or performing any clinical work, and his academic appointment was allowed to lapse in 2013. *See* http://thechronicleherald.ca/metro/160433-psychiatrist-had-sex-with-prostitutes-but-faces-no-criminal-charges (last visited Sept. 12, 2013); http://www.linkedin.com/pub/carlo-carandang/65/8ba/25 (last visited Sept. 12, 2013).

whether they are accurately described in Lexapro's label and whether plaintiffs' litigation-driven contentions about the data are correct (*e.g.*, did Celexa Study 18 demonstrate "statistically significant greater mean improvement from baseline, compared to placebo," as the FDA concluded, or did the study only find "statistical significance [by] using data from unblinded patients" such that the drug only "marginally outperform[ed] placebo," as Plaintiffs contend). There cannot be any reasonable dispute that adjudicating these claims would require precisely the sort of technical and intricate inquiry that falls squarely within the FDA's primary jurisdiction. *See, e.g.*, *Aaronson v. Vital Pharm., Inc.*, No. 09-cv-1333 W(CAB), 2010 WL 625337, at *3 (S.D. Cal. Feb. 17, 2010) (dismissing consumer protection claims in light of "FDA's unique ability to discern scientific data and ensure uniform regulation in the field"); *see also Pejepscot Indus. Park, Inc. v. Maine Central R.R.*, 215 F.3d 195, 205 (1st Cir. 2000) (holding that dismissal or stay is appropriate where agency expertise is needed to unravel intricate, technical facts).

## CONCLUSION

For all of the foregoing reasons and those stated in defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss the *Marcus* Complaint, defendants respectfully request that this Court grant their motion to dismiss the complaint in its entirety, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6).

Dated:   September 16, 2013                                Respectfully submitted,

                                                           /s/ Kristin D. Kiehn

SUGARMAN, ROGERS, BARSHAK                                  DEBEVOISE & PLIMPTON LLP
& COHEN, P.C.
101 Merrimac Street                                        919 Third Avenue
Boston, MA 02114                                           New York, NY 10022
Tel.: (617) 227–3030                                       Tel.: (212) 909–6000
Fax.: (617) 523-4001                                       Fax: (212) 909–6836

10

| | |
|---|---|
| *Of counsel*: | *Of counsel*: |
| Natasha C. Lisman (BBO # 301700) | Edwin G. Schallert |
| William F. Benson (BBO # 646808) | Kristin D. Kiehn |
| lisman@srbc.com | J. Robert Abraham |
| benson @srbc.com | egschall@debevoise.com |
| | kdkiehn@debevoise.com |
| | jrabraham@debevoise.com |

*Attorneys for Defendants Forest Laboratories, Inc. and Forest Pharmaceuticals, Inc.*

**CERTIFICATE OF SERVICE**

  I, J. Robert Abraham, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those attorneys still active indicated as non-registered participants on September 16, 2013.

              /s/ J. Robert Abraham

              J. Robert Abraham